IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CURTIS R. SPIVEY, JR., | ) | |
|     Plaintiff, | ) | Civil Action No. 7:14cv006098 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Michael F. Urbanski |
|     Defendant. | ) | United States District Judge |

Curtis R. Spivey, Jr., an inmate proceeding *pro se*, filed this civil action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2402, 2671-80, alleging that he was falsely imprisoned. The United States filed a motion to dismiss for lack of subject matter jurisdiction and Spivey has responded thereto, making this matter ripe for disposition. For the reasons stated herein, I will deny the government's motion to dismiss.

I.

On September 26, 2003, the United States District Court for the Eastern District of Virginia convicted Spivey of assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. § 113(a)(3), and sentenced him to 110 months of incarceration. Nearly four years later, on August 10, 2007, the United States District Court for the Eastern District of Virginia vacated Spivey's 2003 conviction and sentence. While incarcerated at the United States Penitentiary in Lee County, Virginia ("USP Lee"), on August 15, 2007, Spivey received the order vacating his criminal conviction and sentence, and on August 20, 2007, Spivey spoke with a Federal Bureau of Prisons ("BOP") employee about the order. Spivey states that he told the employee that his conviction from 2003 had been vacated, showed her the order, and asked whether it meant that he could go to Pennsylvania to serve an outstanding state sentence. Spivey states that the BOP employee told him that he could not go to Pennsylvania because he was "not finished with the feds" and he had a "parole violation to deal with before going to any detainers."

In August 2008 and over the course of the next three years, Spivey was transferred from USP Lee to federal facilities in Kentucky, Oklahoma, California, Illinois, and Indiana.

Spivey alleges that on March 11, 2011, he received a "Sentence Monitoring Computation Data" report which showed that he was serving the federal sentence that had been imposed in 2003 and vacated in 2007. The report, which Spivey attaches to his complaint, also lists three detainers pending against Spivey when his conviction was vacated: 1) a detainer lodged on January 26, 2004 by Maryland for first degree murder, 2) a detainer lodged on February 26, 2004 by the U.S. Parole Commission for a parole violation, and 3) a detainer lodged on January 16, 2007 by Pennsylvania for first degree murder. Shortly after receiving the report, Spivey filed grievances concerning his detention and on April 13, 2011, Spivey refused to submit to mandatory DNA sampling because he felt BOP employees were ignoring his claim that his "sentence [wa]s inaccurate." The next day, Spivey was transferred from BOP custody to state custody on one of his outstanding detainers.[1]

Nearly sixteen months later, on August 12, 2012, Spivey filed an administrative claim with the BOP, alleging that he had been falsely imprisoned. Spivey's administrative claim was denied with an explanation that "[i]nvestigation of [Spivey's] claim did not reveal [that he] suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment." Spivey's request for reconsideration was also denied.

## II.

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." Welch v. United States, 409 F.3d 646, 650 (4th Cir. 2005) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). However, the FTCA "effects a limited

---

[1] The government alleges that Spivey was released to Pennsylvania but Spivey alleges he was transferred to Maryland. The online Pennsylvania state inmate locator lists Spivey as being in Pennsylvania custody at this time. However, this issue is not material to the determination of this case.

waiver of the United States' sovereign immunity for 'personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" Welch, 409 F.3d at 651 (quoting 28 U.S.C. § 1346(b)(1)). A plaintiff may bring a cause of action against the government under the FTCA "only if [he] would also have a cause of action under state law against a private person in like circumstances." Miller v. United States, 932 F.2d 301, 303 (4th Cir. 1991) (citing 28 U.S.C. § 1346(b) and Corrigan v. United States, 815 F.2d 954, 955 (4th Cir. 1987)). While state law "determines whether there is an underlying cause of action . . . federal law defines the limitations period and determines when that cause of action accrued." Miller, 932 F.2d 303 (citing Washington v. United States, 769 F.2d 1436, 1437-38 (9th Cir. 1985)). An FTCA "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401. A cause of action under the FTCA accrues "when the plaintiff knows, or in the exercise of due diligence should have known, that he is injured and of the cause of the injury." Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) (citing United States v. Kubrick, 444 U.S. 111, 120 (1979) and Gould v. U.S. Dep't of Health & Human Servs., 905 F.2d 738, 742 (4th Cir. 1990)).

Sprivey has sued for false imprisonment and the accrual date for this tort begins to run when the plaintiff had "a complete and present cause of action"— that is, when he could "file suit and obtain relief." See Wallace v. Kato, 549 U.S. 384, 388 (2007) (internal quotation marks omitted). The government argues that Spivey's claim accrued on August 20, 2007, when Spivey knew that the district court vacated his 2003 conviction and sentence, and Spivey argues that his claim accrued on March 11, 2011, when he received the "Sentence Monitoring Computation Data" report showing that he was still serving the vacated sentence.

However, it is unclear to the court how the detainer lodged on February 26, 2004 by the U.S. Parole Commission impacted Spivey's federal detention. For example, if Spivey had a U.S. Parole Commission sentence to serve after his 2003 criminal conviction was vacated, then he may not have been falsely imprisoned at the time the sentence was vacated and, thus, his cause of action on his false imprisonment claim had not yet accrued. Or, if the U.S. Parole Commission postponed execution of its detainer, he may have been falsely imprisoned after the U.S. Parole Commission made that decision.[2] Until the court knows whether there was a federal detainer actually pending against Spivey in 2007 when his criminal conviction was vacated and, if so, when that term of imprisonment ended, the court cannot determine when Spivey's cause of action accrued and, therefore, whether Spivey's complaint is timely filed. For these reasons, the government's motion to dismiss is denied without prejudice, and the government is directed to file a new dispositive motion within thirty days with detailed information directed to the issue of the timing and impact of the U.S. Parole Commission's detainer. In particular, the court needs to know the timing and impact, if any, of the U.S. Parole Commission's detainer and the "postponed execution of its detainer" on Spivey's claim that he was wrongly held in federal custody from August 2007 until April 2011.

Entered: February 6, 2015

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge

---

[2] In its motion to dismiss, the government states that "[t]he U.S. Parole Commission postponed execution of its detainer, and Spivey was released to Pennsylvania where he is serving life without parole." The government provides no information to support this statement other than to cite to the "Sentence Monitoring Computation Data" report that Spivey attached to his complaint. However, that report does not make clear that the U.S. Parole Commission did in fact postpone its detainer or when, if at all, the decision to postpone the detainer was made.